**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| SEL MANUFACTURING CO., LTD., | ) | Chapter 15 |
| | ) | |
| Debtor in a Foreign Proceeding. | ) | Case No. 19-10988 (MFW) |
| | ) | |

**VERIFIED PETITION UNDER CHAPTER 15 FOR ORDER AND FINAL DECREE**
**GRANTING RECOGNITION OF FOREIGN MAIN PROCEEDING**
**AND OTHER RELATED RELIEF**

SEL Manufacturing Co., Ltd. ("**SEL Manufacturing**" or the "**Company**"), in its capacity as the duly authorized foreign representative (the "**Foreign Representative**") with respect to the foreign proceeding, Case CP (IB) No. 114/Chd/Pb/2017 (the "**Indian Proceeding**"), commenced against SEL Manufacturing (the "**Foreign Debtor**") by the State Bank of India on November 22, 2017, under Section 7 of the Indian Insolvency and Bankruptcy Code, 2016 and pending in India before the National Company Law Tribunal, Chandigarh Bench, Chandigarh ("**NCLT**" or the "**Indian Court**"), by and through its undersigned counsel, files this *Verified Petition Under Chapter 15 for Order and Final Decree Granting Recognition of Foreign Main Proceeding and Other Related Relief* (the "**Verified Petition**") in furtherance of the Official Form 401 Petition [D.I. 1] (the "**Petition**") filed today (the Verified Petition and Petition, collectively, referred to as the "**Chapter 15 Petition**"), under sections 1504 and 1515 of chapter 15 of title 11 of the United States Code (the "**Bankruptcy Code**"), commencing this chapter 15 case and seeking an order and final decree granting recognition of the Indian Proceeding as a "foreign main proceeding," as such term is defined in section 1502(4) of the Bankruptcy Code.

In support of the Chapter 15 Petition, the Foreign Representative has filed (a) the *Motion of the Foreign Representative for Chapter 15 Recognition and Final Relief* and the *Memorandum of Law in Support of Motion of the Foreign Representative for Chapter 15 Recognition and Final Relief* (collectively, the "**Recognition Motion**"), (b) the *Declaration of R. Craig Martin Regarding Determination of Foreign Law* ("**Martin Declaration**"), and (c) the *Declaration of Mr. Vivek Sibal in Support of Verified Petition Under Chapter 15 for Order and Final Decree Granting Recognition of Foreign Main Proceeding and Other Related Relief* (the "**Sibal Declaration**").

The Foreign Representative petitions this Court as follows:

## PRELIMINARY STATEMENT[1]

1.      As discussed at length below, the Foreign Representative has commenced this chapter 15 case, seeking aid in respect of the Indian Proceeding, in order to level the playing field for itself, its creditors, and other interested parties in India and the United States and to eliminate significant inconsistencies in rulings of the Indian and United States courts.  Specifically, the Indian Proceeding has stopped creditor action; yet, parties continue to take action against the Foreign Debtor within the territorial jurisdiction of the United States in violation of a moratorium imposed in the Indian Proceeding.  Specifically, Revman International, Inc. ("**Revman**"), one of SEL Manufacturing's customers, continues to litigate against SEL Manufacturing in the United States in an attempt to garnish the Foreign Debtor's assets located within the United States.  It is doing so despite its knowledge that the Company's assets are subject to an order of the Supreme Court of India, continuing a lower court's order, that requires all revenues to be deposited into a trust account that has been established for the benefit of SEL Manufacturing's financial creditors as part of the Corporate Debt Restructuring process.  This trust account is also monitored by a third

---

[1]      Capitalized terms used but not defined in this Preliminary Statement have the meanings given to them below.

party to ensure wages are paid to employees and vendors are paid.  If not stayed, Revman's continued enforcement of a void Default Judgment it obtained against SEL Manufacturing in the United States in contravention of the moratorium imposed in India will further destabilize its business operations, undermine SEL Manufacturing's relationships with its vendors and financial creditors, and jeopardize the livelihood of thousands of employees the Foreign Debtor employs. More importantly, the Foreign Debtor will not be in compliance with orders of the Supreme Court in India if its revenues are garnished and not deposited into the trust account.  To prevent these potentially devastating effects of Revman's enforcement actions, the Foreign Representative is seeking recognition of the Indian Proceeding by this Court.

2.      This Verified Petition, the Sibal Declaration, and the materials attached to the Martin Declaration, all filed today, verify the facts pertinent to and necessary to sustain the Foreign Representative's request for (a) a finding that the Indian Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code; (b) a finding that the Foreign Representative is a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code; (c) entry of an order recognizing the Indian Proceeding as a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code; and (d) other relief necessary to ensure the Foreign Debtor complies with the orders issued by the Indian courts.

3.      As more fully analyzed in the Recognition Motion, as required by section 1515(b) of the Bankruptcy Code, the Petition is accompanied by a copy of the relevant Indian Court orders, commencing the Indian Proceeding and corporate resolutions, appointing the Foreign Representative.  (*See* Petition [D.I. 1], Exs. A-1 & A-2.)  In accordance with section 1515(c) of the Bankruptcy Code, the Foreign Representative has also filed a disclosure and verified statement, identifying all foreign proceedings with respect to the Foreign Debtor that are known to the Foreign

Representative.  (*See* Petition [D.I. 1], Ex. B.)  The Foreign Representative respectfully submits that the Chapter 15 Petition satisfies the requirements of chapter 15 of the Bankruptcy Code because the Indian Proceeding is a "foreign proceeding" as defined in section 101(23) of the Bankruptcy Code, the Foreign Representative is a "foreign representative" as defined in section 101(24) of the Bankruptcy Code, and all other requirements for recognition have been fulfilled. Additionally, the Chapter 15 Petition satisfies the requirements in sections 1515 and 1517 of the Bankruptcy Code, mandating recognition.  For these reasons, as more fully explained below, the Foreign Representative respectfully requests that the Court grant the relief requested in this Chapter 15 Petition.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this case under sections 157 and 1334 of title 28 of the United States Code and the *Amended Standing Order of Reference* of the United States District Court for the District of Delaware (Sleet, C.J.), dated February 29, 2012.

5.      The Foreign Representative has properly commenced this case under sections 1504 and 1515 of the Bankruptcy Code.  This Chapter 15 Petition is a core proceeding under section 157(b)(2)(P) of title 28 of the United States Code.

6.      Venue for this case is proper in this Court under section 1410 of title 28 of the United States Code because the principal asset of the Foreign Debtor in the United States is located in this judicial district.  As demonstrated by a garnishment action pending in the Superior Court of the State of Delaware, a garnishee, Sam's East, Inc., has answered Revman's garnishment writ by taking the position that SEL Manufacturing has issued invoices in the amount of $2,686,648.43 to Wal-Mart Stores, Inc., which separately contracted with Sam's East, Inc. under a Direct Imports Supplier Agreement.  Sam's East, Inc. has further stated that its position is that these invoices constitute "rights" or "credits" under 10 *Del. Code* § 3508.  Accordingly, this significant asset is

located in Delaware.  In addition to this asset, the Foreign Debtor has deposited a retainer with

DLA Piper LLP (US) in which it has an ownership interest.  These funds are held in a Wells Fargo

bank account in accordance with Delaware Rule of Professional Responsibility 1.5.  (*See* Martin

Decl. ¶ 4.)  Further, as mentioned above, the Foreign Debtor is defending a lawsuit that is pending

in the Delaware Superior Court captioned *Revman International Inc. v. SEL Manufacturing Co.,*

*Ltd.*, C.A. No. N18J-01382.  (*Id.* ¶ 5.)  Finally, venue in this district is also consistent with the

interests of justice and the convenience of the parties, having regard to the relief sought by the

Foreign Representative.

7.     The statutory bases for the relief requested in this Chapter 15 Petition are sections

101(23)-(24), 105(a), 306, 1502, 1504, 1507, 1509, 1510, 1512, 1515, 1516, 1517, 1520, 1521,

1522, and 1524 of the Bankruptcy Code.

## **BACKGROUND**

### A.     **SEL Manufacturing's Business and Operations**

8.     SEL Manufacturing is an Indian company with its registered office and

headquarters at 274, Dhandari Khurd, G.T. Road, Ludhiana (Punjab) 141014 in India.[2]  The

Company originally was incorporated under the name Saluja Exim Ltd. as a public limited

company on May 8, 2000.  Mr. Ram Saran Saluja was the founder of the Company, and he has

managed textile companies in India for almost forty years, manufacturing yarns, fabrics, and

garments.  In 2003, the Company changed its name to SEL Manufacturing.  SEL Manufacturing

has listed its equity shares on the Bombay Stock Exchange and the National Stock Exchange of

India Ltd., and it files its periodic reports with the Securities and Exchange Board of India.  The

---

[2]     The Company is managed from India, its Managing Directors are domiciled in India, and the Company's board meetings have been held physically in India.  The Company's secretarial, administrative, and managerial functions are also in India, and they have not at any time been located outside of India.  The Company's key creditors are aware that SEL Manufacturing's center of main interest is in India.

Company's Global Depository Receipts are listed on Luxembourg Stock Exchange. The Company has four subsidiaries that it either wholly owns or in which it owns substantially all of the shares, namely, SEL Aviation Pvt. Ltd., SEL Textiles Ltd., Silverline Corporation Ltd., and M/SE Exports.

9.      The Company is a vertically integrated multi-product textile company, manufacturing various kinds of knitted garments, terry towels, knitted and processed fabric, and various kinds of yarn. About forty-seven percent of the Company's total revenue comes from the sales of yarns, while the sale of terry towels accounts for another approximately thirty percent of the Company's revenue. The Company has various manufacturing facilities throughout India, including spinning units in Rajasthan, Haryana, Himachal Pradesh, Madhya Pradesh, and Punjab. SEL Manufacturing expanded into spinning operations in 2005 and into terry towels in November 2008. The Company achieved exponential growth within a short span and its present capacities include 859,152 spindles in spinning, 13,440 rotors, 43,050 tons per annum in knitting and processing, 4,500 tons per annum in yarn processing, 27,000 tons per annum in terry towel manufacturing, and 8.5 million pieces per annum in ready-made garments. During its 2017-2018 fiscal year, however, the Company's sales decreased due to financial constraints, and, as a result, the Company is presently only operating its textile segment. As of the end of March 2019, the Company had around 12,000 direct employees in India and its operations supported another 50,000 indirect jobs.

**B.      SEL Manufacturing's Capital Structure**

10.      The Company has a fiscal year end of March 31 and its most recent Audited Annual Report is for the 2017-2018 Fiscal Year End March 31, 2018. As of that date,[3] the Company had

---

[3]      The amounts in this paragraph reflect the conversion from Indian Rupees to United States Dollars as of March 31, 2018, at which time the conversion rate was as follows: ₹1 = $0.0154.

total assets of approximately $673,597,632, comprised of (a) non-current assets, such as property, plant, and equipment and trade receivables of approximately $588,397,640 and (b) current assets such as inventories, cash, and availability under loans of approximately $85,199,991.   The Company had current and non-current liabilities of approximately $691,225,982, consisting mostly of borrowings under financial arrangements and other financial liabilities and trade payables.

11.     As of June 13, 2018, as part of its Corporate Insolvency Resolution Process in India, the Company had received proofs of claim totaling $1,096,604,402[4] from its creditors, 98.9% of which were from financial creditors.  The details of these claims are set forth on the list of creditors attached to the Martin Declaration as Exhibit 1-K.

12.     The Company has pledged substantially all of its assets to a consortium of lenders under a Master Restructuring Agreement, executed as part of the Corporate Debt Restructuring process in India.   The details of that pledge collateral security are attached to the Martin Declaration as Exhibit 1-L.  The Company's auditors listed seventeen secured parties that have lent money to the Company, to which the auditors state in their 2018 report the Company is in default of as of March 31, 2018.

C.     **Events Leading to the Initiation of the Corporate Insolvency Proceeding in India**

13.     Starting around 2010, the Company pursued aggressive growth path but due to an industry slowdown and company-specific issues such as growing debt, delayed realization of receivables, working capital shortfall, delays in project completion, and cash flow mismatch, the Company had a liquidity issue.  As a result, the Company faced financial problems and anticipated

---

[4]     The amount reflects a conversion of Indian Rupees to United States Dollars as of May 31, 2018, at which time the conversion rate was as follows: ₹1 = $0.01483.

difficulty in servicing its debt obligation.  Therefore, it approached the lenders about restructuring its debts under Corporate Debt Restructuring mechanism, which was approved by a Letter of Approval, dated June 30, 2014.[5]  Under this Corporate Debt Restructuring mechanism, Trust and Retention Accounts were instituted for all of the Company's revenue, and a monitoring institution was appointed to monitor the Company's operations on a day-to-day basis.

14.     The funds under the credit facilities contemplated under that restructuring package were not released by the lenders to the Company, which resulted in sub-optimal utilization of manufacturing facilities.  Due to non-disbursement of funds, the Company could not complete one of its spinning projects where substantial amount was already incurred.  All this has led to adverse financial performance and erosion in net worth of the Company.  Also, the Company has been facing cash flow constraints and has considerably grown its balance sheet, including debt.  Due to the Initiation of the Corporate Insolvency Resolution Process in India and cash flow mismatch due to the lenders not releasing working capital funds, the Company has not been able to meet its debt service obligations under the terms of Corporate Debt Restructuring package approved by the governing body.  Due to financial constraints, the Company has also started job work operations in some of its spinning plants.  Since the Company continued to have difficulty with its debt service obligations, the Company has requested its lenders for a second/deep restructuring of its debts.

---

[5]     The Corporate Debt Restructuring mechanism is a non-statutory insolvency proceeding established by the Reserve Bank of India in Circular DBOD No. BP.BC. 15/21.04.114/2000-01, dated August 23, 2001, as revised in Circular DBOD No. BP.BC. 68/21.04.114/2002-03, dated February 5, 2003, and Circular DBOD No. BP 1762/21.04.132/2004-04, dated May 6, 2005.  The objective of the Corporate Debt Restructuring is to ensure timely and transparent mechanism for restructuring the corporate debts of viable entities facing problems, outside the purview of legal proceedings, for the benefit of all concerned.  In particular, the framework aims at preserving viable companies that are affected by certain internal and external factors and minimizing the losses to the creditors and other stakeholders through an orderly and coordinated restructuring program. The Reserve Bank of India issued Circular DBR. No. BP.BC 101/21.04.048/2017-18 on February 12, 2018, which, among other things, withdrew the circulars related to the Corporate Debt Resolution mechanism.  On April 2, 2019, the Supreme Court of India invalidated the February 12, 2018 Circular in *Dharani Sugars & Chems. Ltd. v Union of India & Ors.*, which means these issues remain in a state of development in India.

Considering the state of the art manufacturing facilities of the Company, most modernized technology, skilled labor force, professional management, and inherent viability of the Company, the lenders had in-principle agreed for second/deep restructuring of the debts.

###        D.        Initiation of Corporate Insolvency Proceeding in India

15.        Pending discussions with the lenders, the State Bank of India, in its capacity as financial creditor, filed a petition on October 12, 2017, (the "**Involuntary Petition**") under India's recently enacted "Insolvency and Bankruptcy Code, 2016" (the "**Indian Insolvency Code**") before the NCLT.  (*See* Martin Decl., Ex. 1-A "Involuntary Petition.")  On April 11, 2018, the NCLT entered an order, admitting the Involuntary Petition and placing SEL Manufacturing into a Corporate Insolvency Resolution Process (the "**Admittance Order**"). (*See* Martin Decl., Ex. 1-B "Admittance Order.")  In the Admittance Order, the Indian Court declared a moratorium under section 14 of the Indian Insolvency Code prohibiting, among other acts, the institution of suits or the continuation of pending suits, or proceedings against the corporate debtor including execution of any judgment, decree or order in any court of law.  (*See Id.*, Admittance Order ¶ 43-46.)  The moratorium was effective from the date of the order, April 11, 2018, until the completion of the Corporate Insolvency Resolution Process or until the Indian court approves a resolution plan or enters an order of liquidation under the Indian Insolvency Code.  (*Id.*)

16.        Although the majority of secured lenders have already stopped charging interest on borrowings since the accounts of the Company have been categorized as Non-Performing Asset, the Company has stopped accruing unpaid interest effective April 1, 2016, due to the initiation of the Corporate Insolvency Resolution Process.

17.        On April 25, 2018, the NCLT entered a judgment (the "**IRP Appointment Judgment**"), appointing Mr. Navneet Kumar Gupta, having Registration No.IBBI/IPA-001/IP-P00001/2016-17/10009, as Interim Resolution Professional for an interim period of thirty days to

manage the affairs, business, and assets of the Company.  (*See* Martin Decl., Ex. 1-C "IRP Appointment Judgment.")

18.     On April 27, 2018, as part of the Corporate Insolvency Resolution Process, in a public announcement issued under Regulation 6 of the Insolvency and Bankruptcy Board of India (Insolvency Resolution Process for Corporate Persons) Regulations, 2016, a notice was given to SEL Manufacturing's creditors of the commencement of the insolvency proceeding and of the deadline of May 9, 2018 to submit proofs of claim (the "**Bar Date Announcement**").  The Bar Date Announcement was subsequently amended by an addendum, which was published in several newspapers in India, such as Financial Express, Free Press, Punjabi Jagran, and Navbharat Times (the "**Addendum**").  (*See* Martin Decl., Ex. 1-D "Bar Date Announcement/Addendum.")  The Addendum extended the deadline for filing proofs of claim through May 31, 2018, which "alteration [was] made on account of the interim resolution professional not being vested with the management of affairs of the Company during the time period starting from 1st May 2018 to 22nd May 2018 by order of court . . . ."  As mentioned above, the Company's creditors submitted proofs of claim totaling $1,096,604,402.

19.     The Company sought a stay of its admittance to a Corporate Insolvency Resolution Process and of the appointment of the Interim Resolution Professional, which was denied.  The Company also sought a stay of the order admitting the Company to the Corporate Insolvency Resolution Process and appointment of the Interim Resolution Professional before the National Company Law Appellate Tribunal ("**NCLAT**"), but the NCLAT denied the stay request, leaving the order of April 11, 2018, in full force.

20.     Under Article 62 of the Indian Insolvency Code, any person aggrieved by an order of the NCLAT may file an appeal to the Supreme Court of India on a question of law arising out

of such order.  SEL Manufacturing filed a Writ Petition in the High Court of Punjab and Haryana

at Chandigarh (the "**High Court**"), captioned *Dhiraj Saluja v. Union of India & Others.,* CWP-

15685-2018.  In this action, the petitioner, the joint managing director of SEL Manufacturing, itself

a respondent in the matter, argued that similar legal issues present in the matter before the NCLAT

with respect to the Company had arisen in other cases involving other companies and those issues

were pending before the Supreme Court of India.  On June 22, 2018, the High Court considered

the fact that SEL Manufacturing, as respondent before NCLT, was a major exporter and

manufacturer of textile that employed thousands of workers whose future would be in doubt if the

Interim Resolution Professional were to stay in place as he would not be able to keep the Company

running.  (*See* Petition, Ex. A-1 at 2-3.)  Based on this consideration and "to protect the interest of

the bank consortium," the High Court ordered that the Corporate Insolvency Resolution Process

be placed in operational abeyance (the "**Abeyance Order**"), ruling that the board of directors of

SEL Manufacturing can continue to operate its bank accounts and bank operations as before

initiation of the Corporate Insolvency Resolution Process and route all future revenues of SEL

Manufacturing only through the Trust and Retention Accounts from which the salaries and vendors

would be paid promptly without delay.  (*Id.* at 3.)  The Abeyance Order left intact the remaining

mandates of the Admittance Order, including the moratorium imposed by the NCLT.  Specifically,

the High Court ordered as follows:

> It is directed that corporate insolvency resolution process (CIRP) against respondent companies is kept in abeyance, the earlier board of directors of the respondent companies shall operate their bank accounts and bank operations as before initiation of CIRP to protect the interest of the bank consortium.  It is directed that the Board of Directors will route all future revenues of the said respondent companies only through Trust and Retention Accounts.  It is further directed that the petitioner will file undertaking on affidavit that the companies will not dispose of any immovable property without the permission of the court within three working days.

(*See Id.* at 3.)

21.     On July 10, 2018, a petition was filed to transfer the case of *Dhiraj Saluja v. Union of India* from the High Court to the Supreme Court of India (the "**Transfer Petition**").  On July 13, 2018, the Supreme Court of India approved the interim protections granted by the High Court in its Abeyance Order of June 22, 2018, for the period it was considering the Transfer Petition (the "**Interim Transfer Order**").  (*See* Martin Decl., Ex. 1-E "Interim Transfer Order.")  The High Court also entered orders approving the interim protection on August 20, 2018, September 7, 2018, September 25, 2018, October 29, 2018, and November 27, 2018.  (*See* Martin Decl., Ex. 1-F "High Court Interim Orders.")  Thereafter, the Supreme Court of India ordered on September 29, 2018, that the matter entitled *Dhiraj Saluja v. Union of India & Others*, CWP-15685-2018, pending in the High Court be transferred to the Supreme Court of India and that all of the interim orders passed by the High Court continue to operate (the "**Final Transfer Order**").  (*See* Martin Decl., Ex. 1-G "Final Transfer Order.")

**E.     Revman International, Inc.'s Suit and Default Judgment Against SEL Manufacturing in Violation of the Indian Court Orders**

22.     On July 21, 2017, Revman filed a complaint against SEL Manufacturing in the United States District Court for the District of South Carolina (the "**South Carolina District Court**"), alleging that certain products it bought from SEL Manufacturing were not of sufficient quality and asserting damages for an alleged breach of a Manufacturing Agreement (the "**District Court Action**").  Revman purported to serve the complaint on SEL Manufacturing by mail under provisions it contended were relevant.  When it learned of the complaint, SEL Manufacturing filed an application with the Court of Civil Judge, Junior Division, in Ludhiana, India, captioned as *SEL Mfg. Co. Ltd. v. Revman Int'l, Inc.*, CS 3642, for the equivalent of a temporary restraining order in India, in which it sought an injunction (the "**Interim Injunction Application**") on, among other

grounds, that the Manufacturing Agreement was not the relevant contract under which Revman had purchased the goods and that, in any event, the individual that had signed that contract was not authorized to sign the Manufacturing Agreement on behalf of SEL Manufacturing.  (*See* Martin Decl., Ex. 1-H "Interim Injunction Application.")  Based on these and other arguments made in the Interim Injunction Application, an Indian court had entered an interim injunction on August 30, 2017, (the "**Interim Injunction**") and required that it be served on Revman in both New York and South Carolina, which service did occur, as shown by the receipt of mail service of August 31, 2017 (the "**Mail Receipt**").  (*See* Martin Decl., Ex. 1-I "Interim Injunction/Mail Receipt.")

23.    Notwithstanding the Interim Injunction, when the Clerk of the United States District Court for the District of South Carolina entered a default judgment on September 21, 2017, against SEL Manufacturing, Revman moved forward with a *Default Judgment Motion* on October 30, 2017, and participated in a hearing by itself on December 7, 2017, in which it not only failed to inform the South Carolina District Court that an Indian court  had entered the Interim Injunction prohibiting Revman from prosecuting its suit, but its counsel also affirmatively told the court that they had not heard anything from SEL Manufacturing in response to Revman's complaint. Thereafter, the South Carolina District Court entered a default judgment against SEL Manufacturing on January 2, 2018, awarding Revman $2,503,621.81 (the "**Default Judgment**"). Revman then attempted to enforce the Default Judgment.

24.    Revman's prosecution of the lawsuit and then enforcement of the Default Judgment against SEL Manufacturing violated the Interim Injunction and Indian moratorium imposed by the NCLT in the Admittance Order.  Indeed, if the opposite situation arose—where Revman was in bankruptcy and SEL Manufacturing obtained a judgment in India in violation of the automatic stay—Revman would assert that the Indian judgment was void.  For this reason, when SEL

Manufacturing moved to vacate the Default Judgment on August 6, 2018, it advised the South Carolina District Court that it had obtained the Interim Injunction in India and that it was seeking damages from Revman in India for contempt of that order. The record on the Default Judgment also included a copy of the NCLT's Admittance Order of April 11, 2018, which contained the moratorium against the continued prosecution of any suit or the enforcement of any judgment against SEL Manufacturing.

25.      Notwithstanding that the entry of the Default Judgment was invalid because the complaint was not served in accordance with relevant international treaties between India and the United States and that the commencement and continued prosecution of the District Court Action and subsequent enforcement actions were in violation of the Interim Injunction and moratorium imposed by the Indian Court, the South Carolina District Court denied SEL Manufacturing's motion to vacate the Default Judgment (the "**Motion to Vacate**") on March 26, 2019. Because the decision denying SEL Manufacturing's Motion to Vacate is erroneous for numerous reasons, SEL Manufacturing has appealed it to the Court of Appeals for the Fourth Circuit.

**F.      The Chapter 15 Filing**

26.      Revman, however, continues to act in willful violation of both the Interim Injunction and in violation of the Indian moratorium and is intent on enforcing its flawed Default Judgment. To that end, it filed writs of attachment in Delaware and New Jersey. Remarkably, in Delaware it has insisted on going forward and scheduled a hearing for May 10, 2019, on a garnishment of an account receivable owed by Sam's East, Inc. to SEL Manufacturing (which receivable is required to be paid into the Trust and Retention Accounts under the original High Court's Abeyance Order of June 22, 2018, which, as the Supreme Court of India has ordered, remains valid). Indeed, as recently as April 20, 2019, Revman wrote to the Clerk of the Delaware Superior Court to contend that no stay was in effect and that, notwithstanding the appeal, it can

enforce its Default Judgment. (*See* Martin Decl., Ex. 1-J.) In its communication, Revman again omitted to disclose to the United States court that Indian court orders prohibit its enforcement.

27.     Thus, in order to preserve the value of its assets located within the territorial jurisdiction of the United States, SEL Manufacturing must file this chapter 15 case, so that it can obtain recognition of the insolvency proceeding before the NCLT and obtain the stay under sections 1520 and 362 of the Bankruptcy Code of actions in violation of the various orders entered by the Indian courts.

## RELIEF REQUESTED

28.     Based on the foregoing, the Martin Declaration, and the Sibal Declaration offered in support of the Chapter 15 Petition, together with the materials attached to them, the Foreign Representative requests that this Court recognize the Indian Proceeding as a foreign main proceeding under sections 101(23), 1502(4), and 1517 of the Bankruptcy Code and grant related relief under sections 1520 and 1521 of the Bankruptcy Code.

29.     After notice and a hearing at which this Chapter 15 Petition is considered, the Foreign Representative seeks entry of a final order, substantially in the form attached to the Recognition Motion as Exhibit A, granting relief, including, but not limited to:

    a.  Recognizing the Foreign Representative as the Debtor's "foreign representative" as such term is defined in section 101(24) of the Bankruptcy Code;

    b.  Recognizing the Indian Proceeding as a "foreign main proceeding" in accordance with sections 101(23), 1502(4), 1517, and 1520 of the Bankruptcy Code;

    c.  Granting all relief provided in aid of the Indian Proceeding as a foreign main proceeding upon recognition under section 1520 of the Bankruptcy Code,

including without limitation, imposing the automatic stay of section 362 of the Bankruptcy Code in favor of the Foreign Debtor and any property of the Foreign Debtor that is within the territorial jurisdiction of the United States throughout the duration of this chapter 15 case or until otherwise ordered by this Court;

d.  Entrusting the administration, realization, and distribution of the Foreign Debtor's assets located within the territorial jurisdiction of the United States to the Foreign Representative in accordance with subsections 1521(a)(5) and 1521(b) of the Bankruptcy Code;

e.  Granting the Foreign Representative the rights and protections to which it is entitled under chapter 15 of the Bankruptcy Code, including, but not limited to, the protections limiting the jurisdiction of U.S. Courts over the Foreign Representative in accordance with sections 306 and 1510 of the Bankruptcy Code; and

f.  Granting such other relief as may be necessary and appropriate, including entry of a final decree after entry of the order granting the relief requested.

30.    The Foreign Representative seeks this relief at this time, but expressly reserves its right to request other, additional, or further relief or assistance as may be just and appropriate by further application after the hearing in accordance with section 1507 of the Bankruptcy Code or otherwise.

## **CONCLUSION**

WHEREFORE, SEL Manufacturing Co., Ltd., in its capacity as Foreign Representative, respectfully petitions the Court for recognition and relief under chapter 15 of the Bankruptcy Code, the relief requested here, and for such other relief and assistance as may be necessary.

Dated:  Wilmington, Delaware
        May 6, 2019

Respectfully submitted,

**DLA PIPER LLP (US)**

By: */s/ R. Craig Martin*
    R. Craig Martin, Esq.
    1201 North Market Street, 21st Floor
    Wilmington, DE 19801
    Telephone: 302.468.5700
    Facsimile:  302.778.7834
    Email: craig.martin@us.dlapiper.com

-and-

    Oksana Koltko Rosaluk, Esq.
    444 West Lake Street, Suite 900
    Chicago, IL 60606
    Telephone: 312.368.4000
    Facsimile: 312.236.7516
    Email:  oksana.koltko@us.dlapiper.com

*Attorneys for Foreign Representative*
*SEL Manufacturing Co., Ltd.*

## VERIFICATION

I, Neeraj Saluja, the Authorized Officer and Managing Director of SEL Manufacturing Co., Ltd., certify that I am authorized to make this verification in my capacity as a duly authorized officer of SEL Manufacturing Co., Ltd., and that based upon reasonable and good faith investigations, and the knowledge and information known to me to date, the facts set forth in the *Verified Petition Under Chapter 15 for Order and Final Decree Granting Recognition of Foreign Main Proceeding and Other Related Relief* are true and correct to the best of my knowledge, information, and belief.

Dated: May 5, 2019

_____
*Authorized Officer of SEL Manufacturing Co., Ltd.*